UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **DONALD JONES,** ) | |
|                **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **MICHAEL J. ASTRUE,** ) | Case No. 07-2139 |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
|                **Defendant.** ) | |

# REPORT AND RECOMMENDATION

In March 2007, Administrative Law Judge (hereinafter "ALJ") James Gildea denied Plaintiff Donald Jones's application for disability insurance benefits. The ALJ based his decision on a finding that Plaintiff can perform some of his past relevant work.

In August 2007, Plaintiff filed a Complaint for Judicial Review (#5) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits. In May 2008, Plaintiff filed his Motion for Summary Judgment (#21). In July 2008, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#24). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment **(#21)** be **DENIED**.

## I. Background
### A. Procedural Background

Plaintiff filed an application for social security benefits in May 2004, alleging that he became disabled in May 2003. The Social Security Administration (hereinafter "SSA") denied Plaintiff's application initially and upon reconsideration. Plaintiff timely requested a hearing, which ALJ Gildea held in February 2007. Plaintiff was represented by counsel at the hearing. (R. 415.) At the hearing, Plaintiff and vocational expert Ronald Malik testified. In March 2007, the ALJ denied Plaintiff's application for benefits. In June 2007, the Appeals Council denied Plaintiff's request for review of this decision, making the ALJ's decision the Commissioner's

final decision.  In August 2007, Plaintiff appealed this decision by filing a complaint in federal court pursuant to 42 U.S.C. § 405(g).

### B.  Plaintiff's Background

Plaintiff has worked as a truck driving, a spray painter, and a maintenance man.  (R. 108, 166.)  His May 2003 application alleged disability due to discogenic and degenerative back disorders following an injury at work in April 2001.  (R. 28.)

The Commissioner's memorandum describes Plaintiff's medical record in detail and the Court will not repeat it here.

### C.  The Hearing Before the ALJ

The ALJ held a hearing in March 2007, during which Plaintiff and vocational expert (hereinafter "VE") Ronald Malik testified.  At the time of the hearing, Plaintiff was 50 years old.  He finished eighth grade and later obtained his GED.

Plaintiff testified that he currently takes Cymbalta, Zolor (for pain), and Spiriva (every now and then for breathing problems).  (R. 422, 424.)  When his pain is really bad, he uses a Lidoderm patch.  (R. 422.)  He sometimes gets epidural injections for the pain.  He is currently going to the Pain Treatment Center and he sees Dr. Harrison, a licensed clinical social worker, for emotional problems.

Plaintiff's activities of daily living include taking care of three dogs and visiting friends and his brother every now and then.  He goes to town about once or twice a week, sometimes driving and sometimes riding.  He helps with housework, including doing dishes and vacuuming.  He sleeps from five to eight hours a night and will sleep for a couple hours during the day.  (R. 426-27.)

Plaintiff testified that he gets muscle spasms in his back so that he has to lie down for up to five days before he can relax and start moving again. (R. 428.) It helps to lie down, and he has to lie down every day because of the spasms. (R. 429.) The spasms may start after he has done some activity for about 15 minutes, so he will have to rest after 15 minutes of activity. He can sit in a chair for about 15 minutes before he has to get up. (R. 430.) Plaintiff testified that he recently had an injection and it helped for only about five hours before his back tightened up. He can walk for three or four blocks, but then he has to rest. When he stands in one place, "it automatically draws up" on him. (R. 431.)

The ALJ asked the VE whether a hypothetical individual with Plaintiff's past relevant work, a high school equivalent education, and the RFC to perform medium work with no climbing of ladders or ropes or scaffolds, occasional climbing of ramps or stairs, and occasional balancing, stooping, kneeling, crouching, or crawling, could perform Plaintiff's past relevant work. The VE testified that he could work as a paint sprayer and semi truck driver because those jobs were medium level, semi-skilled work. However, the building maintenance job requires more climbing so the hypothetical individual could not do that job.

The VE also testified that the hypothetical individual could not do any of Plaintiff's past relevant work if he was limited to sedentary work. However, the VE testified that such a person could perform the job of enameller. Some of the enameller jobs would also provide a sit-stand option, if the individual required that.

### D. The ALJ's Decision

To be entitled to social security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically-determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 416(i)(1)(A). Social Security regulations outline a five-step inquiry to be followed in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)-(f). The Commissioner must determine in sequence: (1) whether the claimant is currently employed; (2) whether he has a severe impairment, i.e., one

that significantly limits his physical or mental ability to perform basic work activities; (3) whether his impairment meets or equals one listed by the Commissioner; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. Once the claimant has satisfied Steps one and two, he will automatically be found disabled if he suffers from a listed impairment. Between steps three and four, the Commissioner determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations. 20 C.F.R. § 404.1545. If the claimant does not have a listed impairment but cannot perform his past work, the burden shifts to the Commissioner to show that the claimant can perform some other job. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

Here, the ALJ acknowledged that Plaintiff had a severe impairment based on degenerative and discogenic back disorders. Nevertheless, he found that Plaintiff did not have an impairment that satisfied any of the Listings of Impairments, and particularly Listing 1.04 (disorders of the spine). Plaintiff does not challenge this finding. The ALJ also mentioned that Plaintiff was recently diagnosed with hepatitis C, but he is asymptomatic. Plaintiff has a history of surgery for carpal tunnel syndrome and reflex sympathic dystrophy in 1981, with no evidence of current significant symptoms or limitations .

The ALJ next determined that Plaintiff has the residual functional capacity (hereinafter "RFC") to perform medium work with no climbing of ladders or ropes or scaffolds, occasional climbing of ramps or stairs, and occasional balancing, stooping, kneeling, crouching, or crawling. Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff was able to perform his past relevant work as a paint sprayer or semi driver. As a result, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.

## II. Standard of Review

An ALJ's decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The United States Supreme Court has defined

substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. New York*, 305 U.S. 197 (1938)). Where conflicting evidence may allow reasonable minds to differ as to whether a claimant is disabled, the responsibility for making that determination rests with the ALJ. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Therefore, the question for review is not whether Plaintiff is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability. *Id.* at 977. The Court defers to the ALJ's determinations of credibility, "so long as they find some support in the record." *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993).

### III.  Discussion

Plaintiff argues that the ALJ erred by (1) failing to develop the record regarding his mental impairments; (2) disregarding the opinion of Dr. Coe regarding his physical impairments; (3) failing to consider the effects of his pain medications; and (4) failing to include all of his limitations, both physical and emotional/psychological, in the hypothetical question posed to the VE.

#### A.  Whether the ALJ Erred by Failing To Develop the Record

Plaintiff first argues that the ALJ erred by failing to develop the record regarding the fact that he is seeing a counselor.

The ALJ has a duty to develop the record. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). However, an ALJ must recontact medical sources "only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); 20 C.F.R. § 404.1512(e). Thus, the relevant question is whether the medical evidence available to the ALJ provides a sufficient basis for a decision.

Judicial review of administrative decisions is deferential, and courts must respect the authority of an ALJ to decide how much evidence is necessary in a given case. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993) ("[I]t is always possible to do more. How much evidence to gather is a subject on which district courts must respect the [Commissioner's] reasoned judgment.")

In raising this argument, Plaintiff did not refer to any evidence in the record regarding his mental condition. Apparently, his argument that the ALJ failed to adequately develop the record is based solely on his testimony that he takes Cymbalta and has been talking to a licensed clinical social worker about emotional issues.

Plaintiff has not developed this argument. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala,* 13 F.3d 243, 246 (7th Cir. 1994). This is particularly true in light of the fact that the claimant, not the ALJ, bears the burden of presenting medical evidence of an impairment, which means that the claimant bears the risk of uncertainty. *Eichstadt v. Astrue,* 534 F.3d 663, 668 (7th Cir. 2008); 20 C.F.R. § 404.1512(a).

Here, Plaintiff was represented by counsel at the hearing, yet his attorney did not elicit any testimony from Plaintiff about his counseling or any limitations caused by Plaintiff's mental condition. When a claimant is represented by counsel, the ALJ is entitled to assume he is making his best case. *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987). Under these circumstances, the Court concludes that the ALJ did not err by failing to adequately develop the record as to Plaintiff's mental impairments.

### B. Whether the ALJ Erred by Disregarding Dr. Coe's Opinions

Plaintiff next argues that the ALJ erred by disregarding Dr. Coe's opinion regarding Plaintiff's physical impairments. After reviewing Plaintiff's medical records and examining Plaintiff, Dr. Coe opined as follows:

> In my opinion, Mr. Jones requires permanent work restriction due to the condition of ill-being of his lower back. Appropriate restriction at this time would include a limitation in any repetitive bending or twisting of the back and a limitation to the "sedentary" physical demand level only and a limitation in prolonged sitting, standing or walking.

(R. 388.)

Plaintiff stated that controlling weight must be given to treating source physicians. This statement is misleading. The Regulations actually state that the ALJ will give controlling weight to a treating source's medical opinion if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(d)(2).

Furthermore, courts generally give more weight to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)."). Here, as the Commissioner noted, Dr. Coe does not satisfy the definition of a treating physician because he did not have an ongoing treatment relationship with Plaintiff.

The ALJ stated that he did not give controlling weight to Dr. Coe's report because his findings are unsupported by Dr. Coe's own examination or by other medical evidence, including clinic notes from Dr. Willett, Dr. Hebron, and Dr. Dold. The Commissioner elaborated on this reasoning, contending that, regardless of the treatment relationship between Dr. Coe and Plaintiff, the ALJ reasonably gave Dr. Coe's opinion limited weight because it was internally contradictory and inconsistent with other evidence in the record. The Commissioner supported his argument with discussion of evidence and reference to the record.

After reviewing the record and arguments, the Court agrees with the Commissioner. The ALJ did not err by failing to give controlling weight to Dr. Coe's opinions regarding Plaintiff's physical limitations.

### C. Whether the ALJ Erred by Failing To Consider the Effects of Pain Medication

Plaintiff next argues that the ALJ erred by failing to consider the effects of pain medication on Plaintiff.

At the hearing, the ALJ confirmed Plaintiff's current medications, including Cymbalta, Zolor (for pain), and Spiriva (every now and then for breathing problems). (R. 422, 424.) When his pain is really bad, he uses a Lidoderm patch. (R. 422.) He sometimes gets epidural injections for the pain. At the hearing, Plaintiff did not mention any side effects from these medications. As the Court noted above, when a claimant is represented by counsel, the ALJ is entitled to assume he is making his best case. *Glenn*, 814 F.2d at 391. Furthermore, in his brief, Plaintiff did not explain what side effects are at issue or refer to any evidence in the record regarding side effects. Accordingly, the Court concludes that the ALJ did not err by failing to consider side effects.

### D. Whether the ALJ Erred by Failing To Include Plaintiff's Limitations in the Hypothetical Question to the VE

Plaintiff next argues that the ALJ erred by failing to include all of Plaintiff's limitations, both physical and emotional/psychological, in the hypothetical question posed to the VE. Plaintiff did not explain in his brief what physical limitations the ALJ neglected to include, but the Court assumes that he is referring to the limitations Dr. Coe mentioned. Plaintiff also did not explain what mental limitations the ALJ failed to include in the hypothetical question.

The Court found above that the ALJ did not err by failing to give controlling weight to Dr. Coe's opinions regarding Plaintiff's physical limitations. The ALJ acknowledged that Plaintiff has a severe back condition that prevents heavier work activity. (R. 15.) Consistent with this statement, the ALJ limited Plaintiff to medium work. (R. 17.)

Regarding purported mental limitations, Plaintiff has not developed this argument. The record indicates that Plaintiff was diagnosed with depression in late 2005, with symptoms of anxiety and moodiness. His doctor prescribed medication to treat the depression and changed his medication several times in response to Plaintiff's request or insurance issues. From November 2005 through September 2006, clinic notes indicate that Plaintiff exhibited symptoms including anxiety, thoughts of violence (during February 2006), and moodiness. At some point after February 2006, Plaintiff began taking Lexapro which he was taking at least through September 2006. (R. 359.) From March 2006 to September 2006, Dr. Richard DiLorenzo, a gastroenterologist, treated Plaintiff for hepatitis C. His July 2006 clinic notes indicate that Plaintiff felt angry but did not want to harm himself or others. (R. 362.) Subsequent clinic notes indicate that Plaintiff did not want to harm himself or others. (R. 361 (August 2006), R. 359 (September 2006).) Plaintiff has not referred to any evidence in the record regarding his depression and he has not established that his mental condition causes any limitations on his ability to work.

Based on the evidence regarding Plaintiff's physical and mental limitations, the Court concludes that the ALJ's hypothetical question to the VE adequately described Plaintiff's limitations.

While one can sympathize with Plaintiff's difficulties, the Commissioner is permitted to grant social security benefits only to those who are incapable of engaging in any substantial gainful activity by reason of a medically determinable physical or mental impairment. 42 U.S.C. § 423(d); *see Jones v. Shalala*, 10 F.3d 522, 526 (7th Cir. 1993). If jobs exist which a claimant could perform, he will not be entitled to disability benefits. *See* 42 U.S.C. § 423(d)(2)(A). The question this Court must consider is not whether the claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability. *Books*, 91 F.3d at 978. This Court is not free to reweigh conflicting evidence or substitute its own judgment; "so long as reasonable minds may differ, the [Commissioner's] decision will be upheld." *Lee v. Sullivan*, 988 F.2d 789, 793-94 (7th Cir. 1993).

### IV.  Summary

For the reasons set forth above, this Court recommends that Plaintiff's Motion for Summary Judgment **(#21)** be **DENIED**.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute waiver of objection on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 21st day of October, 2008.

                                                      s/ DAVID G. BERNTHAL
                                                      U.S. MAGISTRATE JUDGE